## ROUSER

*v.*

## THE WASHINGTON & GEORGETOWN RAILROAD COMPANY.

PRACTICE; DIRECTING VERDICT; STREET RAILWAYS; NEGLIGENCE.

1. Although in a trial there is an apparent preponderance of evidence in favor of the defendant, the court is not justified in directing a verdict for the defendant, where there is direct evidence for the plaintiff, which if believed by the jury to contain the truth of the issue, would entitle the plaintiff to a verdict.

2. And under like circumstances, a judgment will be reversed when founded upon a general verdict, where there has been an error committed in the trial which may probably have produced, or contributed materially to that verdict.

3. Where the conductor of a street railway car stops the car for passengers to alight, and a passenger, without unreasonable delay, arises from her seat, and while in the act of stepping off, the car is negligently put in motion and she is thrown to the ground and injured, her right to recover is not impaired by the fact that she may have stepped off with her back to the front of the train and without holding to the car.

No. 805. Submitted October 5, 1898. Decided October 21, 1898.

HEARING on an appeal by the plaintiff from a judgment

on verdict in an action to recover damages for personal injuries. *Reversed.*

The COURT in its opinion stated the case as follows:

The appellant, Julia Rouser, was a passenger on one of the appellee's street cars, and was hurt in attempting to alight therefrom on the 4th day of July, 1894. She testified as follows concerning the cause of her injuries:

"When she approached the corner of Twenty-fourth Street she rang the car bell, and the car was stopped, and that as she was standing in the car, but near its side, and was about to step from the body of the car to the running-board, with an infant in her arms, while the car was stopped, the conductor jerked the bell, the car started, and that she was thereby thrown violently to the ground."

The bill of exceptions recites that:

"She further gave evidence tending to prove that at the time of the accident she was standing upon the step of the car, with the baby in her arms, while the car was stopped; that she did not have hold of the car, and that while she was in the act of alighting the car whirled her around and threw her, head northwards, on her back, and that she then had the baby in her arms."

John H. Thomas, a witness for the plaintiff, in the course of his evidence concerning her movements, said: "When I get off a car I catch hold of it this way (indicating); when women get off they don't catch hold of anything; they just go straight off like that (indicating). She got off, and when he put the grip on the car gave a snatch and throwed her, head northwards."

Upon this evidence, with that showing the character of the injuries received, the plaintiff rested her case.

Defendant introduced a number of witnesses, employees, and others, apparently passengers upon the same car, who gave evidence tending to show that "the car stopped at

Twenty-fourth Street long enough to afford her (plaintiff) and other passengers a reasonable opportunity to alight; that the plaintiff, while the said train was stopped, did not attempt to alight or in any way give notice to the defendant's agents in charge of said train that she wished to alight at that point, but that after the train had started, and while it was in motion and going, as some of the defendant's witnesses testified, at or near half speed, and as others of them testified, while it was just starting, but was at each second acquiring a constantly accelerated motion, the plaintiff, Julia Rouser, arose, and, as some of the witnesses testified, walked to the edge of the car on the north side thereof, took hold of the post or pillar on her right side with her right hand, holding an infant child in her left hand, and then stepped to the running board or to the ground, with her back toward the direction in which the car was moving, and in that position she attempted to step from the car while it was in motion, as aforesaid."

Some of the witnesses testified that the plaintiff was about the center of the car seat—an open car with running-board or step running its entire length—and others that she was at or near the end next to the post to which the handlebar is attached. The conductor testified that after the car had started at Twenty-fourth Street the plaintiff "raised her hand, kinder motioned like she wanted to get right off there, and I thought she would get off, and that's why I gave the danger signal. She kinder moved herself along that way in the seat (indicating), and I thought she was going to get off, and I gave the danger signal to prevent it. . . . I immediately gave the danger signal and turned to put on the brakes. The train had just got under motion when this woman gave the signal to me that she wanted to get off. After I gave the danger signal and put on the brakes, the next thing I saw was this woman falling from the car."

Upon this evidence, submitted with a general charge, the jury found for the defendant.

*Mr. Herbert M. Locke* and *Mr. A. S. Worthington* for the appellant:

1. It is clear that any passenger, especially a woman with a baby in her arms, when a car has stopped for the purpose of allowing her to alight, is not to be charged with negligence whether she gets off backwards or forwards, or whether she takes hold of anything or not. If the car remains stationary and the passenger, nevertheless, falls while in the act of alighting, a question will arise as to whether his own carelessness or some defect in the construction, arrangement or management of the car caused the fall; but if the starting of the car while the passenger is getting off throws him to the ground, then it is not a case in which the question of contributory negligence on the part of the passenger is to be left to a jury. In this jurisdiction it has been held that even where a passenger begins to alight while the car is slowing down, but has not been brought to a full stop, and he is thrown to the ground by a sudden increase in the speed of the car, he is entitled to recover on the ground that he had a right to assume that the car would come to a full stop. *Harmon* v. *Railroad Co.*, 18 D. C. 255; S. C., 147 U. S. 583; *McDonald* v. *Railroad Co.*, 116 N. Y. 546; Booth, Street Rwy. Law, Sec. 349.

2. The ruling of the court below restricting the plaintiffs to the permanent injuries which were set forth specifically was erroneous. The declaration was broad enough to cover all permanent injuries. If the defendant had thought some of the averments as to the injuries sustained were too general, it might have called for a bill of particulars. Such objections as that made to the declaration in this case do not at this day commend themselves to the courts. Under modern decisions a variance is overlooked unless it be such as misleads the opposite party. *Dist. of Col.* v. *Haller*, 4 App. D. C. 405; *Railroad Co.* v. *Hickey*, 5 App. D. C. 468; *Railroad Co.* v. *Patterson*, 9 App. D. C. 433; *Railroad Co.* v. *Grant*,

11 App. D. C. 115; *Nash* v. *Towne,* 5 Wall. 689.   There was
evidence tending to show that, in addition to permanent
injuries specified in the declaration, the female plaintiff, as
a result of the accident in question, among other things,
suffered from nervous exhaustion and from partial depriva-
tion of speech.

*Mr. R. Ross Perry* for the appellee:

1. There was, as a matter of fact, evidence of negligence
on the part of the female plaintiff in alighting from the car,
which required submission to the jury.   There was the evi-
dence of the plaintiff that she alighted from the car with an
infant in her arms without catching hold of anything, and
of the defendant, tending to prove that the plaintiff arose
from her seat, held an infant child in her left arm, walked
to the north edge of the car, took hold of the post or pillar
on her right side with her right hand, and then stepped to
the running-board or to the ground with her back towards
the direction in which the car was moving.   It is an ele-
mentary principle that what constitutes negligence will vary
with the varying conditions of each case.   So, a person en-
cumbered with baggage or children is held to greater care
than one unencumbered.   *Railroad Co.* v. *Wingate,* 37 N. E.
(Ind.) 274; *Eppendorf* v. *Railroad Co.,* 69 N. Y. 195.   Again,
in *Beattie* v. *Railroad Co.,* 1 Atl. Rep. (Pa.) 574, the court,
while recognizing the rule that in general it is not negli-
gence as a matter of law to step from a street car while in
motion, yet held that a person stepping off backwards was
guilty of contributory negligence as a matter of law.   There
are many cases holding, upon identical or analogous facts
that the sudden starting of a train while a passenger is
alighting does not justify a court in instructing the jury that
the passenger is not guilty of negligence as a matter of law,
regardless of the manner in which he is alighting.   On the
contrary a passenger is held to knowledge that a railroad or
street car is a dangerous means of locomotion and should

govern himself accordingly.   Whether he acts prudently is a question for the jury.   *Cawfield* v. *Railroad Co.*, 111 N. C. 597; *Chase* v. *Railroad Co.*, 15 N. Y. Supp. 35; *Burrows* v. *Railroad Co.*, 63 N. Y. 556; *Railroad Co.* v. *Mozely*, 79 Ga. 463; *Piper* v. *Car Co.*, 52 Minn. 269; *Railroad Co.* v. *Mills*, 105 Ill. 63; *Railroad Co.* v. *Eldridge*, 151 Ill. 542.

A person encumbered as was the plaintiff and attempting to alight in the manner she essayed was practically as helpless as an intoxicated person, and the question of negligence in alighting from a car should be governed by the same rules.   *Milliman* v. *Railroad Co.*, 66 N. Y. 642; *Kingston* v. *Railroad Co.*, 40 L. R. A. 131, and notes, especially VI., *a* and *b*; Am. & Eng. Encyc. of L., (2d Ed.), Vol. 7, p. 441.   See, also, to the effect that a passenger can not shut his eyes and presume that the carrier has properly performed all his duties.   *Gilman* v. *Railroad*, Mass. 1897; *Seymour* v. *Railroad Co.*, 3 Biss. 43; *McDonald* v. *Railroad Co.*, 88 Iowa, 345; *Railroad Co.* v. *Dingman*, 1 Ill. App. 162; *Railroad Co.* v. *Zebe*, 37 Pa. St. 420.

2. It is a sufficient reply to the exception to the instruction regarding damages, to say that the jury have by their verdict held the plaintiff is herself to blame for all the damages she sustained.   Therefore the error, if any, was harmless, and the judgment will not be reversed.   *Seay* v. *Diller*, 16 S. W. 642; *McConaghy* v. *McMullen*, 27 Wis. 73; *Moran* v. *Railroad Co.*, 2 Baxter (Tenn.), 379; *Rapley* v. *Klugh*, 40 S. C. 134; *Zeigler* v. *Bradley*, 11 Rich. Law, 557.

The same principle is maintained in *City of Griffin* v. *Johnson*, 84 Ga. 279; *Railroad Co.* v. *Warmack*, 86 Ga. 351; *Brockway* v. *Patterson*, 72 Mich. 122; *Mitchell* v. *Churchman*, 4 Humph. (Tenn.), 217; *Baum Iron Co.* v. *Burg*, 47 Neb. 21; *Hershy* v. *Latham*, 46 Ark. 542; *Walker* v. *Rogers*, 24 Md. 237; *Manning* v. *Transfer Co.*, 7 Mackey, 214.

3. The ruling of the trial justice as to the damages recoverable under the declaration was right.   In the District of Columbia today the common law rules as to pleading

apply more fully and strictly than probably anywhere else on the globe. The rule of the common law upon this subject is thus stated in 1 Chitty Pl. *386: "Whenever the damages sustained do not necessarily arise from the act complained of, and, consequently, are not implied by law, in order to prevent the surprise on the defendant which might otherwise ensue on the trial, the plaintiff must, in general, state the particular damage which he has sustained or he will not be permitted to give evidence of it." This rule has been adopted by our leading American textbook on the subject of damages. Sedgwick, Measure of Damages, (4th Ed.), 682, and note. And the Supreme Court of the United States has recognized it to its fullest extent in the case of *Roberts* v. *Graham*, 6 Wall. 578. See, also, *Campbell* v. *Cook*, 86 Tex. 630; *Carter* v. *Tuck*, 3 Gill. 248; *Commrs.* v. *Adams*, 43 Md. 349; *Finn* v. *Adams*, 93 Mich. 504.

Mr. Justice SHEPARD delivered the opinion of the Court:

Error has been assigned on the following special instruction read to the jury in the course of the general charge:

"If the jury shall find from the evidence that after the train on which the plaintiff was riding *stopped* at Twenty-fourth Street for passengers to alight, the plaintiff arose from the seat to alight before the car started forward, and that while she was about to step down on the running-board, in the act of alighting, the car started forward, and that she was thereby, and while she was in the exercise of due care in the manner of alighting, thrown from the car and injured, she is entitled to recover; but if they find that she was negligent in the manner of alighting, and that such negligence caused, or contributed to cause, the accident, then the verdict should be for the defendant."

The bill of exceptions recites that when it was announced by the court that this instruction would be given to the jury, the plaintiff objected, "on the ground that there was no evidence tending to show that the plaintiff was negligent in the manner in which she alighted or undertook to

alight from said train, except the evidence tending to show that she did so while the train was in motion; and upon the further ground that if the car had stopped at Twenty-fourth Street for the purpose of allowing passengers to alight, and the plaintiff was in the act of alighting, and was thrown to the ground by reason of the negligence of the defendant's agents, while she was in the act of alighting, the fact that she was getting off with her back towards the front of the train, or without taking hold of anything, could not, in point of law, be held to contribute to the accident which followed."

The evidence seems to preponderate in favor of the defendant on the issue of its negligence; the charge in general was accepted as sound; and our first impression was that there is no such error in the special instruction complained of as would require a reversal of the judgment. But a careful consideration of the entire evidence in the light of the general charge and the special exceptions taken to the particular instruction aforesaid, has convinced us that error was committed which may reasonably have influenced the jury in finding for the defendant.

Notwithstanding this apparent preponderance of the evidence, there was, nevertheless, direct evidence on the other side which, if believed by the jury to contain the truth of the issue, would have entitled the plaintiff to their verdict thereon. In this condition, it would not have been within the province of the trial court to direct a particular verdict. Nor, under like circumstances, is it proper to sustain a judgment founded on a general verdict where there has been an error committed in the trial which may probably have produced, or contributed materially to that verdict.

In order to apprehend clearly the bearing and effect of the special instruction complained of, it is important to consider other features, general and special, of the court's charge to which no exception was taken.

It was first plainly and correctly put to the jury that the

plaintiff could not recover unless it was first made to appear that the defendant had been guilty of negligence in respect of stopping and starting the car. The duty of the carrier having been explained, the jury were told that the passenger owed a duty to conduct herself "while on the train and alighting therefrom with reasonable regard to its speed and dangerous nature."

At the request of the defendant, the following special instructions were given:

" 2. If the jury shall find from the evidence that on the occasion in question the plaintiff, after the cars started forward from Twenty-fourth Street, arose from the seat to alight, and alighted from the defendant's train of cable cars while the same was in motion, and was injured in consequence of such attempt, then their verdict should be for the defendant."

"3. If the jury shall find from the evidence that the plaintiff, while a passenger on the defendant's train of cable cars on the occasion in question, was about to alight from the said train at Twenty-fourth Street, in the city of Washington, District of Columbia, and that the said conductor negligently failed to stop the said train long enough at the said street to enable the plaintiff to alight thereat, and started the said train before she had arisen from her seat to alight, yet the jury are instructed that such negligence did not give the plaintiff the legal right to alight from the said train while the same was in motion, and if she did attempt so to alight and was injured in consequence of such attempt, she was guilty of contributory negligence, and their verdict should be for the defendant. The plaintiff's duty under the circumstances was to ride to the next stopping place, and to sue the defendant for its breach of contract in failing to allow her to alight at her desired stopping place."

"4. The jury are instructed that it was the duty of the defendant to stop its cars at the regular stopping place on Twenty-fourth Street aforesaid only for a reasonable time wherein to afford the plaintiff and its other then passengers

an opportunity to alight; and if they shall find from the evidence that the plaintiff loitered or delayed unreasonably until after the train had started and then attempted to alight, when the same was going at or near half-speed, and was in consequence injured, then their verdict should be for the defendant."

Another special instruction relating to the negligence of the plaintiff was also given, the effect of which was thus explained to the jury:

"That instruction tells you, gentlemen, that if you believe the female plaintiff had arisen from her seat before the car started, and then, when she found the car was going, did not sit down and not attempt to get off until the car stopped again, but got off while it was in motion, it is for you to say whether you think, under all the circumstances, that was a reasonably prudent thing for her to do. If you think it was reasonably prudent under the circumstances, then she was not guilty of negligence; but if you do not think it was reasonably prudent—that is, that a reasonably prudent person would not have done that—then she was guilty of negligence and can not recover."

These propositions are correctly stated, and apply to the several conditions suggested by the entire evidence.

The carrier is under a duty to stop the car when called upon in time at the proper places, and to hold it a sufficient time for the passengers to alight in safety. If it fails to stop the car at all, and the passenger jumps or steps off, no matter what degree of skill he may exercise in so doing, he can not recover. His own negligence, and not the neglect of duty by the carrier, would clearly be the proximate cause of injuries thereby received.

So, likewise, if the car has been stopped, and then started before the passenger has made ready to get off, and he, rather than pass his stopping place, persists in stepping or jumping from it whilst in apparently rapid and dangerous motion.

Again, if the car has been stopped, and then started whilst the passenger is about to get off, and he is not thrown or shaken from the car or step, but voluntarily steps off and is injured, his right to recover will depend upon the answer to the question, whether, in so doing, he acted as an ordinarily prudent person might reasonably have done under similar circumstances.

In answering this question, it may well be that the peculiar and unreasonable manner in which the attempt to alight is made, would sometimes add materially to the danger of that attempt, and, of itself, furnish potential evidence of contributory negligence; but it does not follow that, in all cases, the manner in which one alights is a proper matter for special submission to the jury.

The general charge and special instructions referred to sufficiently defined the material issues of the case, with the principles of law applicable thereto, for the determination of the jury. There was no necessity for going any farther in the matter of their guidance.

The question then is: Was the duty of the plaintiff in respect of the manner of alighting from the car made more onerous by the special instruction excepted to, than was justified by the evidence relating thereto? We are constrained to think that it was.

This instruction assumed that the car had stopped for passengers to alight; that the plaintiff arose from her seat before the car had started forward, "and that while she was about to step down on the running-board, in the act of alighting, the car started forward, and she was thereby thrown from the car and injured." The jury were told, in this view of the case, that if the plaintiff "was in the exercise of due care in the manner of alighting," she is entitled to recover; but if she was negligent in the manner of alighting, and such negligence caused, or contributed to cause, the accident, then the verdict should be for the defendant.

Considering this instruction in connection with the re-

mainder of the charge, it is apparent that it was intended to apply to the particular part of the evidence showing that in the act of alighting the plaintiff attempted to step off with her back to the front of the train and without holding on to any part of the car.

That it could apply to this particular testimony, and to no other, was called to the attention of the court by the special grounds of objection urged on behalf of the plaintiff. These were, first, that there was no evidence sufficient to warrant an inference of negligence on the plaintiff's part except that tending to show that she undertook to alight while the car was in motion; and, second, "that if the car had stopped at Twenty-fourth Street for the purpose of allowing passengers to alight, and the plaintiff was in the act of alighting, and was thrown to the ground by reason of the negligence of the defendant's agents, while she was in the act of alighting, the fact that she was getting off with her back towards the front of the train, or without taking hold of anything, could not, in point of law, be held to contribute to the accident which followed."

The proposition involved in the first ground of objection had, as we have seen, been fully covered in the general and special instructions that were not excepted to.

The meaning conveyed to the jury by this charge, then, was, that even if they should believe that the train had been stopped, that the plaintiff, without unusual delay, had risen from her seat and undertaken to get out, and that, in the act of stepping out, she was thrown to the ground, by the negligent starting of the car, still, if negligent in "the manner of alighting," she was not entitled to recover. In other words, notwithstanding the negligence of defendant, she could not recover, if, in the opinion of the jury, her failure to take hold of the cars, or her stepping off backwards, contributed to the fall and injuries that she received.

As we have before said, there may indeed be many cases where the manner in which a passenger undertakes to alight

from a car might well be regarded as an act of contributory negligence, sufficient to bar a recovery; but this case, as presented by the particular facts to which the special instruction was intended to apply, is not one of them.  The manner in which the plaintiff attempted to get off the car did not, under the conditions stated in the instruction, warrant its submission to the jury as an act of contributory negligence.

Assuming, as we must, in order to apprehend the bearing and full effect of the instruction, that the defendant had stopped the car for passengers to alight, that plaintiff, without unreasonable delay, had risen from her seat for that purpose, and that whilst in the act of stepping off, the car was negligently put in motion, and she was thrown to the ground, we think that, as matter of law, her right to recover could not be impaired by the fact that she may have stepped off with her back to the front of the train and without holding to the car.

When the car has been stopped, the passenger has the right to presume that it will not be started while he is in the act of stepping off.  Consequently, whilst it would be prudent to provide against possible negligence of the carrier, by grasping the handle-bar and getting off with face to the front, we can not say that he is under any legal obligation to do so.

We think that he has the right to step off with or without grasping the car, and facing in any direction that he chooses, and that the defendant, whose car has been started in breach of its duty, is in no condition to complain that the passenger awkwardly and carelessly availed himself of his privilege to alight in his own way from a car that was motionless and was bound to remain so until he had safely left it.

Any other rule would work injustice to passengers, and be opposed to the established public policy which, in the interest of the safety of life and limb, demands a very high

degree of care on the part of carriers in the matter of receiving, carrying and discharging passengers.

The case of this appellant—upon the assumption, of course, that she was guilty of no negligence beyond that claimed in the manner in which she stepped from the car which had been stopped for the purpose—fairly illustrates the injustice of a rule that would bar recovery for an injury caused by a carrier's neglect of duty, because, without anticipating such act of negligence, she awkwardly stepped from the car with her back to the front of the same and without holding to something until safely upon the street. Having a baby in her arms, she might not have been able to spare a hand to grasp the car at all; and in her ignorance she might have supposed it safe to face towards the rear rather than towards the front of the train. If she was not guilty of contributory negligence in attempting to get out at all, at the particular time, there is nothing in the evidence in respect of the manner in which she stepped off the car which ought to prevent her recovery.

There is one other instruction upon which error has been assigned, but as it relates to the measure of damages recoverable under the pleadings, and is not likely to arise upon another trial, its consideration is not neceessary.

For the error committed in giving the special instruction which has been the subject of consideration, the judgment will be reversed, with costs to the appellant, and the cause remanded for a new trial. It is so ordered.

*Reversed and remanded.*